**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**YASSER ABDELHAQ,**

        **Petitioner,**

**v.**                                    **CIVIL ACTION NO. 3:21-CV-145
(GROH)**

**DONALD F. AMES,**

        **Respondent.**

## <u>REPORT AND RECOMMENDATION</u>

### I.     INTRODUCTION

      This case was initiated on September 2, 2021, when the Petitioner filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  The Petitioner paid the $5.00 filing fee on September 28, 2021.  ECF No. 20.

      Accordingly, this case is before the undersigned for a report and recommendation pursuant to Local Rule of Prisoner Litigation Procedure (LR PL P) 2, <u>et seq</u>., and 28 U.S.C. §§ 1915(e) and 1915(A).

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   State Court Proceedings: Conviction, Sentence, Direct Appeals, and Habeas Corpus Petitions [1]

Petitioner is currently a state prisoner incarcerated in Mount Olive Correctional Center in Mount Olive, West Virginia.   https://apps.wv.gov/ois/offendersearch/doc. Following the November 1999 killing of Dana Tozar, Petitioner has twice been convicted of her murder in the Circuit Court of Ohio County, West Virginia, and three times appealed his conviction and sentence, and subsequent habeas corpus cases to the Supreme Court of Appeals of West Virginia.  In Petitioner's latest appeal to the Supreme Court of Appeals, that court summarized the proceedings through June 2021:

> In January of 2000, petitioner was indicted in the Circuit Court of Ohio County on one count of first-degree murder for the stabbing death of Dana Tozar ("the victim"). At a jury trial in August of 2000, petitioner was convicted of first-degree murder and sentenced to a life term of incarceration without the possibility of parole. Petitioner appealed his conviction in *State v. Abdelhaq* ("*Abdelhaq I*"), 214 W. Va. 269, 588 S.E.2d 647 (2003), and this Court vacated the conviction due to a defective indictment and remanded the matter. *Id.* at 274, 588 S.E.2d at 652. Shortly after this Court's decision in *Abdelhaq I*, petitioner contends that he filed in the circuit court, as a self-represented litigant, a "blue print" outlining his strategy for his second trial. In this "blue print," petitioner states that he "instructed counsel not to tell the jury he was guilty of murder [in a second trial]."
>
> Petitioner was indicted for a second time on one count of first-degree murder for the murder of the victim and was represented by attorneys Robert G. McCoid and John J. Pizzuti. At petitioner's second trial, he admitted to killing the victim and sought a conviction on the lesser-included offense

---

[1]  The facts contained in Section I.A. are taken from the memorandum decision issued  in docket number 20-0521, by the State of West Virginia Supreme Court of Appeals, on June 23, 2021, in www.courtswv.gov/supreme-court/memo-decisions/spring2021/20-0521%20md.pdf;  Abdelhaq v. Ames, 2021 WL 2581741 (June 23, 2021).  Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

of second-degree murder. Petitioner was again convicted of first-degree murder. In the bifurcated sentencing stage, the jury did not recommend mercy. Accordingly, the circuit court sentenced petitioner to a life term of incarceration without the possibility of parole. Subsequently, petitioner's second appeal to this Court was refused by order entered on May 25, 2005.

In 2006, petitioner filed his first petition for a writ of habeas corpus in the circuit court, raising the following fourteen grounds for relief: (1) Whether petitioner was denied effective assistance of trial counsel; (2) Whether the evidence was insufficient to support a conviction for first-degree murder; (3) Whether the introduction of autopsy photographs was more prejudicial than probative; (4) Whether petitioner was denied a right to a fair sentencing when the circuit court allowed the victim's family to testify during the second phase of the bifurcated trial as to their preference that he be denied mercy; (5) Whether the jury should have been instructed with regard to mitigating factors on which it could determine petitioner's eligibility for parole; (6) Whether the circuit court's refusal to suppress all evidence seized during a warrantless search of the motel room where the crime took place was erroneous; (7) Whether the admission of hearsay testimony was erroneous; (8) Whether the admission of photographs of the victim before her death, i.e. "life photographs," was erroneous; (9) Whether the circuit court's refusal to admit evidence of the victim's drug use was erroneous; (10) Whether the circuit court's refusal to admit evidence of a witness's past criminal history was erroneous; (11) Whether the inclusion of a jury instruction with regard to "transferred intent" was erroneous; (12) Whether the circuit court's failure to include a jury instruction defining the term "spontaneous," as it related to the issue of deliberation, was erroneous; (13) Whether the circuit court's jury instruction, instructing the jury that the use of a deadly weapon allows an inference of malice and intent to kill, was incomplete; and (14) Whether the circuit court's refusal to limit petitioner's cross-examination of a State's witness with regard to specific intent was erroneous. The circuit court denied the petition by order entered on March 22, 2006, without holding a hearing.

Petitioner appealed the circuit court's March 22, 2006, order denying his first habeas petition on May 3, 2006. By order entered on December 6, 2006, this Court "grant[ed] [petitioner's] petition for appeal." The Court did not reverse the March 22, 2006, order, but remanded the case to the circuit

court "for the holding of an omnibus habeas corpus hearing on the issue of ineffective assistance of [trial] counsel." Upon remand, the parties litigated whether petitioner was barred from raising every issue set forth in the habeas petition except for ineffective assistance of trial counsel. Following a September 11, 2015, hearing, by order entered on October 19, 2015, the circuit court ruled that petitioner was barred "from raising any claim other than his claim for ineffective assistance of [trial] counsel," finding that petitioner misinterpreted this Court's decision in *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981), setting forth principles governing the application of the doctrine of res judicata in habeas cases.

With regard to ineffective assistance of trial counsel, petitioner and both trial counsels testified at an August 2, 2016, omnibus hearing. Petitioner asserts that the issue of his strategy "blue print" for the second trial "was never settled" because "counsel state[d] they did not have a copy of the trial strategy." Nevertheless, Mr. McCoid testified unequivocally that petitioner understood "the full ramifications" of counsels' trial strategy of admitting that he killed the victim and asking for a conviction of second-degree murder and gave his consent. At several points during his testimony, Mr. McCoid addressed discussions the attorneys had with petitioner concerning the trial strategy, petitioner's understanding of the risks and benefits of such a strategy, and petitioner's consent to pursuing it. Having the benefit of seeing the State's theory of the case during the first trial, Mr. McCoid testified that they reevaluated the trial strategy since this "was not a case about whether [petitioner] had taken [the victim's] life," but was rather "about what his mental status was at the time that he did so." Mr. McCoid relied on portions of his opening statement where he admitted that petitioner killed the victim, but urged the jury to convict petitioner of second-degree murder due to the absence of premeditation. Based upon the opening, Mr. McCoid indicated during the omnibus hearing that

> [i]t is inconceivable that I would have given an opening statement in a first-degree murder case asking the jury to convict my client of second-degree murder without hav[ing] closely consulted with my client, discussed the minutia associated with that decision and obtained the full consent of my client in ... advancing that defense.

Thereafter, by order entered on December 29, 2016, the circuit court rejected petitioner's ineffective assistance claim and denied the habeas petition.

Petitioner appealed the circuit court's December 29, 2016, denial of the habeas petition to this Court. However, petitioner did not challenge the court's October 19, 2015, order allowing him to raise only ineffective assistance of trial counsel at the omnibus hearing. In *Abdelhaq v. Terry* ("*Abdelhaq II*"), No. 17-0078, 2018 WL 6131283 (W. Va. November 21, 2018) (memorandum decision), this Court affirmed the circuit court's denial of the habeas petition. Relevant here, the Court found that "[a]side from [petitioner's] unsupported claims that he never agreed to the strategy to admit culpability and seek a second-degree murder conviction, the evidence obtained at the omnibus hearing overwhelmingly establishes that petitioner's trial counsel advanced this strategy with petitioner's consent and support." *Id.* at *3. Petitioner subsequently filed a petition for rehearing which the Court refused by order entered on March 7, 2019. On March 15, 2019, this Court issued its mandate, and the decision in *Abdelhaq II* became final.

Petitioner filed his second habeas petition in the circuit court on August 12, 2019. In the habeas petition, petitioner argued that the circuit court erred in its October 19, 2015, order in *Abdelhaq II* by allowing him to raise only ineffective assistance of trial counsel at the omnibus hearing. Petitioner further argued that habeas counsel in *Abdelhaq II* was ineffective in failing to adequately argue to the circuit court that none of the fourteen issues set forth in the first habeas petition were adjudicated prior to the August 2, 2016, omnibus hearing. Accordingly, petitioner reasserted every issue from the first habeas petition in his second habeas petition. With regard to ineffective assistance of trial counsel, petitioner argued that the United States Supreme Court's decision in *McCoy v. Louisiana*, 138 S.Ct. 1500 (2018), represented a change in the law favorable to him. By order entered on March 30, 2020, the circuit court denied the second habeas petition, finding that petitioner's claims were adjudicated in the first habeas proceeding in *Abdelhaq II*. The circuit court rejected petitioner's claim that habeas counsel failed to adequately argue that none of the fourteen issues set forth in the first habeas petition were adjudicated prior to the August 2, 2016, omnibus hearing, due to a lack of support for the claim. Finally, the circuit court found that the United States Supreme

> Court's decision in *McCoy* did not represent a change in the
> law such that petitioner would be allowed to relitigate the issue
> of whether he consented to trial counsels' strategy of
> admitting that he killed the victim and asking for a conviction
> of second-degree murder.
>
> Petitioner now appeals the circuit court's March 30, 2020,
> order denying his second habeas petition.

Abdelhaq v. Ames ("*Abdelhaq III*"), No. 20-0521, 2021 WL 2581741, at *1–3 (W. Va. June 23, 2021) (bracketed text in original); ECF No. 33-28.  In *Abdelhaq III*, the Supreme Court of Appeals affirmed the circuit court's March 30, 2020, order which denied Petitioner's second petition for a writ of habeas corpus.

### B.    Instant Federal Habeas Petition

In the instant § 2254 petition, Petitioner raises six[2] grounds for relief, that:

(1) there was insufficient evidence to prove that Petitioner was capable of the premeditation necessary to support a first-degree murder conviction [ECF Nos. 24 at 8, 24-1 at 13];

(2) the trial court erred in rulings on the admission and preclusion of evidence, specifically:

(a) admission of autopsy photographs; and

(b) admission of life photos of the victim;

(c) exclusion of testimony about the victim's drug use;

(d) exclusion of the criminal history of a state witness; and

(e) exclusion of limited cross examination of State witnesses.

[ECF Nos. 24 at 10 – 11, 24-1 at 14];

---

[2]  Petitioner concedes that although he raises six claims for relief, many of his claims have sub-grounds.  ECF No. 43-1 at 7 – 8.

(3) the trial court erred in its jury instructions related to transferred intent, "the definition of spontaneous relative to deliberation", and inferred intent [ECF Nos. 24 at 13, 24-1 at 16];

(4) the trial court erred when it permitted the victim's family to make a sentencing recommendation during the bifurcated penalty phase of trial [ECF Nos. 24 at 15, 24-1 at 19];

(5) he received ineffective assistance of counsel at trial, specifically when counsel:

(a)    Failed to object to the prosecutor's misstatement of law in closing argument [ECF No. 24-1 at 19 – 20];

(b)    Failed to object to the prosecutor's statement during closing argument regarding the credibility of a state witness [Id. at 20 – 21];

(c)    Failed to object to the prosecutor's mention of "mercy" during the bifurcated penalty phase [Id. at 21 – 22];

(d)    Failed to object to a jury instruction "which allowed the inference of malice and intent to kill from the use of a deadly weapon" [Id. at 22]; and

(e)    Employed a trial strategy, without Petitioner's approval, that conceded Petitioner was guilty of second degree murder [Id. at 22 – 26]; and

(6) the warrantless search of Petitioner's hotel room was an unreasonable search and seizure, and the evidence obtained should have been suppressed [ECF No. 24-1 at 27].

Petitioner acknowledged in his petition that he raised claims 1 through 4 on direct appeal and in a prior habeas corpus proceeding. ECF No. 24 at 9, 11, 13 – 14, 16. Further, Petitioner acknowledged in his petition that he raised claim 5, ineffective

assistance of counsel, in a prior habeas corpus proceeding, but was precluded from raising that issue on direct appeal.  ECF No. 24-1 at 26.  Finally, Petitioner acknowledged in his petition that although he raised claim 6, regarding the warrantless search of his hotel room, in a prior habeas corpus proceeding, he failed to raise the issue on direct appeal because his counsel on direct appeal was ineffective.  Id. at 28 – 29.

For relief, Petitioner requests that the Court reverse his conviction and remand the matter for a new trial.  ECF No 24 at 22.

### C.   Respondent's Motion to Dismiss or For Summary Judgment

On March 28, 2022, Respondent filed a motion to dismiss, or for summary judgment.  ECF No. 33.  Respondent filed a memorandum [ECF No. 34] in support thereof, and extensive exhibits [ECF Nos. 33-1 through 33-32] from the state court proceedings.  Respondent contends that Petitioner also raised seventh and eight claims for relief that Petitioner's constitutional rights were violated: (7) when appellate counsel failed to raise the issue of trial counsel failing to object to, move for a mistrial, and/or request a limiting instruction based on the testimony of state witnesses; and (8) by the effects of cumulative error.  ECF No. 34 at 18.

Respondent argues that Petitioner is not entitled to the writ of habeas corpus because: (1) grounds 2 and 3 are partially, and grounds 6, 7, and 8, are completely procedurally defaulted based on Petitioner's failure to exhaust state remedies [Id. at 20 – 26]; (2) ground 1 is without merit because the evidence[3] supported a first-degree murder

---

[3] Respondent contends that state expert witness, Dr. Krieg, testified that neither Petitioner's depressive nor psychotic disorders rendered him incapable of distinguishing right from wrong.  ECF No. 34 at 27.  Further, the state's second expert witness, Dr. Williams, agreed with Dr. Krieg's opinions.  Id. Additionally, Petitioner's own expert witness testified that Petitioner was not experiencing any diminished capacity resulting from drug use, and knew the difference between right and wrong.  Id.  Finally, the Respondent argues that the number of stab wounds, mainly above the victim's waist, inflicted the maximum possible pain, and the fact that Petitioner cleaned the victim's blood from her body, and attempted to clean

8

conviction [Id. at 26 – 28]; (3) the admission of autopsy photos did not constitute error as alleged in ground 2, because the photos "provided probative evidence of the elements of murder, namely premeditation given the number of stab wounds" [Id. at 28 – 29]; (4) Petitioner's claims in ground 3 were proper and consistent with both federal and state law [Id. at 29 – 30]; (5) the admission of testimony from the victim's family during the penalty phase was permissible [Id. at 31 – 32]; and (6) Petitioner failed to demonstrate that he received ineffective assistance of counsel pursuant to Strickland v. Washington, based on (a) failure to object to an alleged misstatement of law by the prosecutor because trial counsel did not view this as a clear misstatement of the law; (b) failure to object to the prosecutor offering his person opinion on an expert witness' credibility because "[c]ommenting on the evidence and attacking the credibility of witnesses is a crucial part of closing arguments"; (c) failure to object to the prosecutor's use of the word "mercy" during the penalty phase because a prosecutor may properly argue that a murder was committed without mercy, and thus merits no mercy for the murderer in sentence; (d) failure to object to a jury instruction on the inference of malice based on West Virginia law that permits such an inference; (e) related to counsel's trial strategy to seek a conviction for the lesser included offense of second degree murder because Petitioner's contention that he disagreed with the plan contradicted his counsel's testimony and his own testimony[4] that he would have been thrilled to be convicted of second-degree murder with

---

the crime scene after the murder, indicated that he was not acting under any diminished capacity, and committed an intentional act.  Id. at 27 – 28.

[4]   At the evidentiary hearing in his habeas petition in Ohio County Circuit Court, Petitioner was asked, "And you would've been thrilled to get a verdict of life with mercy or second-degree murder, anything but life without, correct?" and answered, "Correct."  ECF No. 33-24 at 160:12 – 15.

the resulting term of incarceration which would permit a possibility of release [Id. at 33 –
46].

      **D.**    **Petitioner's Response to Motion to Dismiss or for Summary Judgment**

      Petitioner filed a response in opposition to the motion to dismiss or for summary
judgment, along with a memorandum on May 9, 2022.  ECF No. 43, 43-1.  Petitioner
takes issue with Respondent's characterization of his claims as being eight grounds for
relief, rather than six, even though Petitioner concedes that several of his claims contain
subparts.  ECF No. 43-1 at 7.  Petitioner contends that he did not raise grounds 7 and 8
as articulated by Respondent.  Id. at 8.

      Petitioner argues that: (1) his psychosis, including his drug-induced psychosis,
precluded him from forming the necessary intent to commit first degree murder, and that
the jury's verdict is "grossly contradictory to the weight of the evidence" [Id. at 12- 14]; (2)
he was prejudiced by the individual and cumulative effect of the trial court's erroneous
evidentiary rulings, including admission of autopsy photos, hearsay testimony, and life
photos of the victim, and the exclusion of testimony regarding the victim's drug use, a
state witness' criminal history, and limited cross examination of witnesses [Id. at 15 - 20];
(3) the individual and cumulative effect of the trial court's erroneous jury instructions[5] on
aggravation and mitigation, transferred intent, the definition of "spontaneous related to
deliberation", inferred intent from the use of a deadly weapon [Id. at 20 – 26]; (4) he
received ineffective assistance of counsel when his counsel failed to object to the
prosecutor's misstatement of the law, the prosecutor's "vouching" for a witness, the

---

      [5]  Petitioner concedes that all of these claims regarding jury instructions were raised before both
the Ohio County Circuit Court and the Supreme Court of Appeals, and that he was denied relief on all these
grounds.  Id. at 21.

prosecutor's mention of mercy during closing argument, to the instruction on inferred intent, and concession of guilt without Petitioner's consent [Id. at 28 – 35]; and (5) his constitutional rights were violated by unreasonable search and seizure [Id. at 35 – 36].

## III.   LEGAL STANDARDS

### A.   Pro Se Litigants

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  A complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[6] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

---

[6]  The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

490 U.S. at 327.

**B.    Petitions for Relief Under 28 U.S.C. § 2254**

All petitions for habeas corpus relief under § 2254 are subject to a strict one-year period of limitation, based on the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Further, pursuant to Rule 3, of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he time for filing a petition is governed by 28 U.S.C. § 2244(d)."   That statute provides that:

> **(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> **(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Substantively, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper.  Under 28 U.S.C. § 2254(a) a district court must entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

A petitioner can only seek § 2254 relief if he has exhausted the remedies available in state court, the corrective process is not available in state court, or the state process is ineffective to protect the petitioner.  28 U.S.C. § 2254(b).  Moreover, "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254 (c).

The statute further addresses when a writ of habeas corpus shall not be granted to a state prisoner:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).  The statute also fully addresses factual determinations made in state court:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254 (e).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir.

1999).  The "contrary to" and "unreasonable application clauses of § 2254(1)(d) have separate and independent meanings.  <u>Williams v. Taylor</u>, 529 U.S. 362, 364 (2000).  A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's."  <u>Lewis v. Wheeler</u>, 609 F.3d 291, 300 (4th Cir. 2010) (quoting <u>Williams</u>, 529 US at 405) (internal quotations omitted).  A writ of habeas corpus may be granted under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case."  <u>Id.</u> at 300 - 301 (internal marks omitted).  Therefore, the AEDPA limits the habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision.

      **C.**    **Ineffective Assistance of Counsel**

     In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test to determine whether counsel was constitutionally ineffective.  Under the first prong, Petitioner must demonstrate that his counsel's performance was deficient and "fell below an objective standard of reasonableness."  <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984).  But, "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense assistance after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  <u>Id.</u> at 689. In addition, a court must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonably professional assistance. Id. at 689-90. There are no absolute rules for determining what performance is reasonable. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (noting counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Under the second prong, Petitioner must show that the deficient performance caused him prejudice. Strickland, 466 U.S. at 687. To show prejudice, Petitioner must show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993) (quoting Strickland, 466 U.S. at 687 (1984)).  Consequently, if counsel's errors have no effect on the judgment, the conviction should not be reversed. Strickland, 466 U.S. at 691.  The Fourth Circuit has recognized that, if a defendant "cannot demonstrate the requisite prejudice, [then] a reviewing court need not consider the performance prong" and vice versa.  Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

**D.    Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 S.Ct. 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 – 21 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).   Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).   Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570.   In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.   Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

 "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009).   Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678.   "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.   Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.    Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E.    Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 – 23 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88.  Anderson, supra, at 248-49.

## IV.    ANALYSIS

Petitioner is not entitled to relief because he seeks habeas corpus relief upon six grounds which have all previously: (1) been raised and decided either in the Circuit Court of Ohio County, West Virginia, or the West Virginia Supreme Court of Appeals, or both; and/or (2) been procedurally defaulted.  Under the plain language of the statute—that a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings—all six of Petitioner's claims fail because those claims were previously raised and adjudicated on the merits in State court.  Further, not only were those claims decided in State court, Petitioner does not contend, nor does this Court find that those decisions were contrary to or involved an unreasonable application of Federal law.

### A.    Claims Previously Decided in State Court

#### 1.    Ground 1: Sufficiency of the Evidence Presented at Trial

Petitioner's claim that there was insufficient evidence to support his conviction was previously addressed by the Circuit Court of Ohio County in Petitioner's first habeas corpus petition, filed in 2006.  ECF No. 33-28 at 1.  In that first habeas corpus petition, Petitioner raised 14 separate issues, including the sufficiency of evidence at his trial.  Id. at 1 – 2.  In ground 2 therein, Petitioner questioned "[w]hether the evidence was insufficient to support a conviction for first-degree murder."  Id. at 1.  The circuit court denied the petition, which denial the Petitioner appealed to the Supreme Court of Appeals of West Virginia.  Id. at 2.

19

In his petition for appeal, Petitioner asserted that, "there was insufficient evidence to find the Petitioner guilty of first degree murder beyond a reasonable doubt." ECF No. 33-17 at 3. Without addressing the merits of other issues, the Supreme Court of Appeals remanded the matter to the circuit court for an omnibus hearing on the limited issue of ineffective assistance of trial counsel. Id.

Following an omnibus hearing, the circuit court again denied the first habeas corpus petition by order entered on December 29, 2016. Id. That decision was affirmed by the Supreme Court of Appeals of West Virginia in its *Abdelhaq II* decision issued November 21, 2018. Id.; ECF No. 33-5. In its unpublished opinion, the Supreme Court of Appeals did not address sufficiency of the evidence, however, Petitioner's brief shows that the issue was raised before that court. ECF Nos. 33-5. Petitioner's claim raised herein contains the identical issue that he raised before the circuit court, and appealed to the state Supreme Court of Appeals. That claim was adjudicated in the circuit court, and in the Supreme Court of Appeals.

Further, Petitioner has not articulated any grounds that would support relief under the "contrary to" or "unreasonable determination" exceptions found in subparagraphs (1) and (2). Petitioner has not shown any unreasonable application of federal law which occurred in the state proceedings in relation to the finding that there was sufficient evidence presented at trial to support his conviction. Nor does Petitioner allege that the state court's adjudication resulted in a decision based on an unreasonable determination of the facts.

Thus, under the plain language of § 2254, Petitioner's first claim as to the sufficiency of the evidence has already been considered in State court, adjudicated on

the merits, and does not meet either exception listed in the statute.   Accordingly, Petitioner's first claim for relief is without merit and should be denied.

### 2.    Ground 2: Evidentiary Rulings by the Trial Court

Petitioner's claim that the trial court erred in evidentiary rulings raises five separate issues: (1) admission of autopsy photos; (2) admission of life photos of the victim; (3) exclusion of testimony about the victim's drug use; (4) exclusion of the victim's criminal history; and (5) the limited cross examination of State witnesses.  ECF Nos. 24 at 10 – 11, 24-1 at 14.  All five evidentiary issues were previously raised by Petitioner in his first habeas corpus petition before the circuit court.  Further, after denial of relief in the circuit court, all five issues were appealed to the Supreme Court of Appeals of West Virginia.

In his first state habeas petition, Petitioner argued in the circuit court that the trial court erred by:

(1)    In ground 3, "allowing into evidence autopsy photographs that were more prejudicial than probative."  ECF No. 33-15 at 4;

(2)    In ground 8, "admitting into evidence cumulative photographs of the alleged victim before her death."  Id. at 6;

(3)    In ground 9, "not allowing evidence of drug use by the alleged victims."  Id.;

(4)    In ground 10, "not allowing evidence of [State's witness] past criminal history."  Id.; and

(5)    In ground 14, "limiting defense cross examination."  Id. at 8.

As noted above, the circuit court denied Petitioner relief on all grounds.  ECF No. 33-16. When Petitioner appealed the denial of habeas relief to the Supreme Court of Appeals, he argued these five grounds of trial court error:

(1)     In ground 3, "by allowing too many 'gruesome' autopsy photographs at trial." ECF No. 33-17 at 3;

(2)     In ground 8, "by allowing too many 'life photographs' of the victim into evidence." Id.;

(3)     In ground 9, "by not allowing evidence of prior drug use by the victim." Id.;

(4)     In ground 10, "by not allowing  testimony about [State's witness'] criminal history." Id.; and

(5)     In ground 14, "by limiting cross examination (of a state witness) designed to determine the Petitioner's specific intent." Id. at 4.

Petitioner's claims on evidentiary rulings raised herein are the same five claims which he raised in his prior habeas before the state circuit court, and before the state Supreme Court of Appeals.  In both the circuit court and the Supreme Court of Appeals, Petitioner's five claims of improper evidentiary rulings were found to be without merit. Further, Petitioner has not articulated any grounds that would support relief under the "contrary to" or "unreasonable determination" exceptions found in subparagraphs (1) and (2).  Petitioner has not shown any unreasonable application of federal law which occurred in the state proceedings in relation to the finding that his statement to law enforcement was made voluntarily.   Additionally, Petitioner does not allege that the state court's adjudication resulted in a decision based on an unreasonable determination of the facts.

Thus, under the plain language of § 2254, Petitioner's second claim which encompasses five evidentiary rulings, has already been considered in State court and adjudicated on the merits, and does not meet either exception listed in the statute. Accordingly, Petitioner's second claim for relief is without merit and should be denied.

### 3.      Ground 3: Jury Instructions

Petitioner's claims raised in ground three related to the jury instructions given by the trial court is also without merit.   Petitioner claims the trial court erred when it: (1) instructed the jury without defining "aggravation and mitigation"; (2) erroneously instructed the jury on transferred intent; (3) instructed the jury without defining "spontaneous relative to deliberation"; and (4) erroneously instructed the jury on inferred intent through the use of a deadly weapon.   ECF No. 24 at 13.   The first of those claims related to the definition of aggravation and mitigation was raised by Petitioner in his direct appeal filed with the Supreme Court of Appeals.   ECF No. 33-11 at 38 – 40.   The remaining three claims were raised by Petitioner in his state habeas corpus claim in the Ohio County Circuit Court. Petitioner raised the issue of whether the jury was properly instructed on transferred intent before the circuit court in ground 11.   ECF No. 33-15 at 6.   Petitioner argued in ground 12, that the trial judge erroneously by refusing to instruct the jury on "spontaneous" as relates to deliberation.   Id. at 7.   In ground 13, Petitioner argued that the circuit court erred when it instructed the jury that it could infer malice and intent to kill based on the use of a deadly weapon.   Id.

Petitioner raised the final three grounds before the Supreme Court of Appeals when he appealed the denial of habeas corpus relief.   ECF No. 33-17.   In his petition for relief before the Supreme Court of Appeals, Petitioner claimed in ground 11 that the trial judge "erred by instructing the jury about 'transferred intent.'"   Id. at 3.   Further, Petitioner claimed in ground 12 that the trial court erred "by not instructing the jury about the meaning of 'spontaneous' relative to 'deliberation.'"   Id.   Finally, Petitioner contended in ground 13 that the trial judge erroneously instructed the jury "that intent could be inferred

23

by the use of a deadly weapon." Id. at 3 – 4.  Again, Petitioner acknowledges that he has previously raised all of his ineffective assistance of counsel claims, in state court, either in a direct appeal, or in a prior state habeas proceeding.  ECF No. 24 at 13 – 14.

In his third ground for relief Petitioner has failed to articulate any grounds that would support relief under the "contrary to" or "unreasonable determination" exceptions found in subparagraphs (1) and (2).  Petitioner has not shown that the state court's decisions were contrary to or involved an unreasonable application of federal law in relation to his claim of erroneous jury instructions.  Additionally, Petitioner does not allege that the state court's adjudication resulted in a decision based on an unreasonable determination of the facts.   Accordingly, under the plain language of the statute, Petitioner's third claim has been considered and adjudicated on the merits in State court, thereby precluding relief under § 2254.

### 4.    Claim 4: Evidentiary Rulings of the Trial Court in the Bifurcated Penalty Phase

Petitioner's fourth claim for relief is that the trial court "erroneously allowed the victim's family to give the jury a sentencing [recommendation] during the sentencing phase of Petitioner's bifurcated trial."  ECF No. 24 at 15.  However, that same claim was previously raised by Petitioner in both his direct appeal and in his prior state habeas petition.  In his direct appeal, Petitioner asserted that the trial court when it allowed "the decedent's family to testify in the second phase of the bifurcated trial as to their preference that Petitioner [should] be denied mercy."  ECF No. 33-11 at 40 – 43.  In his habeas corpus appellate petition filed with the Supreme Court of Appeals, Petitioner restated that claim as, "the trial judge erred by allowing family members of the victim to recommend life without the possibility of parole when they testified during the sentencing phase of the

trial."  ECF No. 33-17 at 3.  As discussed above, Petitioner was denied relief on all these grounds by both the circuit court and Supreme Court of Appeals.

Further, Petitioner has not articulated any grounds that would support relief under the "contrary to" or "unreasonable determination" exceptions found in subparagraphs (1) and (2).  Petitioner has not shown any unreasonable application of federal law which occurred in the state proceedings in relation to the testimony permitted during the bifurcated sentencing or penalty phase of Petitioner's murder trial.  Additionally, Petitioner does not allege that the state court's adjudication resulted in a decision based on an unreasonable determination of the facts.

Thus, under the plain language of § 2254, Petitioner's fourth claim as to the testimony permitted in the penalty phase has already been considered in State court and adjudicated on the merits, and does not meet either exception listed in the statute. Accordingly, Petitioner's fourth claim for relief is without merit and should be denied.

### 5.    Claim 5: Ineffective Assistance of Counsel at Trial

Petitioner's ineffective assistance of counsel claim raised in ground five is also without merit.  Petitioner claims his counsel provided ineffective assistance of counsel when his lawyer failed to: (1) object to an alleged misstatement of law during closing argument; (2) object to the prosecutor's opinion on the credibility of a witness; (3) object to the prosecutor's reference to "mercy" during the penalty phase; (4) object to a jury instruction on malice; and (5) obtain Petitioner's consent to concede that Petitioner was guilty of second-degree murder.

In his state habeas corpus claim in the Ohio County Circuit Court, in ground 1, Petitioner alleged that he received ineffective assistance of counsel, including when

counsel admitted Petitioner was guilty of second-degree murder, contrary to Petitioner's wishes.  ECF No. 33-15 at 2.  In the appeal of his denial of habeas corpus, in ground 1 Petitioner more generally alleged ineffective assistance of counsel.  ECF No. 33-17 at 3. The Supreme Court of Appeals remanded the matter to the circuit court for additional proceedings on the subject of ineffective assistance of counsel.  ECF No. 33-18.

Upon remand, Petitioner twice, by counsel, filed amended petitions for habeas corpus.  ECF Nos. 33-19, 33-21.  The second of those petitions, filed on August 18, 2014, argued that Petitioner received ineffective assistance of counsel at trial when: (1) counsel failed to object to an erroneous statement of law by the prosecutor; (2) counsel failed to object during closing arguments when the prosecutor attacked the credibility of a defense witness; (3) failed to object to the prosecutor's "prejudicial remark concerning mercy" in the sentencing phase of the trial; (4) failed to ask for a jury instruction on involuntary manslaughter, and incorrectly applied a diminished capacity defense to the element of premeditation and deliberation, rather than to intent and malice.  ECF No. 33-21 at 11.

The circuit court, by order entered on October 19, 2015, limited the remanded habeas proceedings to claims of ineffective assistance of counsel.  ECF No. 33-23.  On August 2, 2016, the circuit court conducted an evidentiary hearing on the allegations of ineffective assistance of counsel.  ECF No. 33-24.  Most significantly, at the hearing, Petitioner's trial counsel testified about and read a letter that Petitioner wrote to his counsel which stated:

> Dear John and Rob, as I told you today, I want to plead guilty for killing Dana.  I did not plan to kill her on that day, but due to my mental condition and drug use, I unfortunately did kill her.  I wish that I could take back what happened that day. Now that I'm thinking better, I know that my mental condition and drug use does not make me innocent, but makes me

> guilty of murder, but not first-degree murder.  Please ask the
> prosecutor to accept my plea of guilty like we talked about.  I
> am so very sorry for what happened.  Thank you, Yasser.

Id. at 88:7 – 17.  In his testimony about developing trial strategy, Petitioner's counsel

testified, "[t]his was not a case about whether Mr. Abdelhaq had taken her life, it was a

question about what his mental status was at the time that he did so."  Id. at 79: 6 – 8.

The trial strategy was further explained by counsel during questioning:

> Q.      Now, Mr. Abdelhaq had been convicted by the first jury
> of murder in the first degree without a recommendation of
> mercy; is that correct?
> A.      Yes.
> Q.      And you knew that by reducing that verdict either to
> murder in the first degree with mercy or second degree [ ]
> would be a great benefit to Mr. Abdelhaq? Would you agree
> with that?
> A.      It was our belief—yes, I would.  It was our belief that
> given the horrific facts associated with the case, which
> involved a paraplegic young lady stabbed 237 times or so by
> a man who was in a profound state of self-induced, psychosis,
> that a jury would not, based upon our review of the evidence,
> based upon a review of the first trial, a transcript, that a jury
> would be inclined to acquit Mr. Abdelhaq on the basis of
> insanity.  In addition, to which we believe the law furnished a
> basis for that type of defense given that the insanity
> associated with—or his mental deficiencies associated with
> drug use was not permanent and fixed.  And the law, although
> I don't think the law has really caught up to the science, the
> law provide—or provided at the time anyway, that in order to
> avail oneself of the defense of diminished capacity as a
> perfect defense, any insanity associated with drug use had to
> be permanent and fixed, and that was not the case.  At least
> as of the time of the competency hearing when Mr. Abdelhaq
> was determined by Drs. William and Hewitt in the court to be
> capable of standing trial.
>
>          So, with those thoughts in mind, we believe that
> presenting the jury with the option of convicting Mr. Abdelhaq
> of murder, provided that it was of the right degree,
> represented the best advantage for use to see that he did not
> get another life in prison with the possibility of parole
> sentence.

Id. at 82:3 – 83:11.   Later in his testimony, trial counsel reinforced that the Petitioner approved of the trial strategy of conceding that he killed the victim, but that based on his inability to premediate, the killing constituted second-degree murder:

> Q.      And had you discussed this strategy with Mr. Abdelhaq prior to making those statements?
> A.      Of course.
> Q.      And could you tell us about that, those conversation.
> A.      Mr. Abdelhaq was very well aware of the substantial limitations that we had in trying this case. . . . [A] conviction of murder in the second degree with a term of years represented a great opportunity for the jury to discharge its duty, to return a verdict of murder, to go back into the community, in Ohio County, and say that they had fulfilled their obligation and that they had not let someone walk away from this horrible event. But at the same time extend and afford Mr. Abdelhaq the opportunity for freedom at some point and to still have a life outside of prison.
> Q.      And he agreed with that strategy; is that correct?
> A.      Yes, he did.
> Q.      After you made that opening statement at trial, did Mr. Abdelhaq express any objection to that strategy?
> A.      To the contrary.  My recollection is, as I took my seat after my opening statement, he said to me, whispered to me, "Good job." . . . . What he did not do was ask me what the hell I had just said.  He did not say what are you doing.  He did not voice objection to Mr. Pizzuti within my range of hearing over what I had stated.  He did not express incredulity or shock at what I had stated.   At that point in time or at any point thereafter in the trial or, frankly, until this habeas petition was filed.  It is inconceivable that I would have given an opening statement in a first-degree murder case asking the jury to convict my client of second-degree murder without having closely consulted with my client, discussed the minutia associated with that decision and obtained the full consent of my client in making that—or advancing that defense.
> Q.      And you got his full consent?
> A.      I did.

Id. at 97:10 – 98:8; 98:12 – 99:1.

Further, Petitioner acknowledges that he has previously raised all of these same ineffective assistance of counsel claims, which were previously adjudicated in state court. ECF No. 24-11 at 26.

Moreover, to the extent that Petitioner claims that trial counsel and/or appellate counsel was ineffective for failing to raise or preserve all potential issues, such a claim does not merit relief.  The Supreme Court has long recognized that:

> When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052 (counsel is "strongly presumed" to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *Massaro v. United States*, 538 U.S. 500, 505, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.

Yarborough v. Gentry, 540 U.S. 1, 8, 124 S. Ct. 1, 5–6, 157 L. Ed. 2d 1 (2003).   "A defendant is bound by the tactical decisions of competent counsel."  Reed v. Ross, 468 U.S. 1, 13, (1984) (Citing Wainwright v. Sykes, 433 U.S. 72, 91, and n. 14 (1977); Henry v. Mississippi, 379 U.S. 443, 451 (1965)).

Counsel made a tactical decision to argue some issues, to the exclusion of other issues favored by Petitioner.  That decision is strongly presumed to have been made in the exercise of professional judgment, and accordingly, counsel's performance in this regard did not fall below an objective standard of reasonableness.  Moreover, there was no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.

Further, Petitioner has not articulated any grounds that would support relief under the "contrary to" or "unreasonable determination" exceptions found in subparagraphs (1) and (2). Petitioner has not shown any unreasonable application of federal law which occurred in the state proceedings in relation to his ineffective assistance of counsel claims. Additionally, Petitioner does not allege that the state court's adjudication of his ineffective assistance of counsel claims resulted in a decision based on an unreasonable determination of the facts.

Thus, under the plain language of § 2254, Petitioner's fifth claim, and its subparts, all of which concern his alleged ineffective assistance of counsel, has already been considered in State court and adjudicated on the merits, and does not meet either exception listed in the statute. Accordingly, Petitioner's fifth claim for relief is without merit and should be denied.

### 6.    Claim 6: Unreasonable Search and Seizure

Petitioner's sixth claim for relief is that the trial court erred when it failed to suppress all evidence seized during a warrantless search of the motel room where the crime occurred. ECF No. 24-1 at 27. That same claim was previously raised by Petitioner in ground 6 of his prior state habeas petition filed in the circuit court. ECF No. 33-15 at 5. In his appeal of the denial of relief in the circuit court, Petitioner asserted in ground 6, that "[p]olice conducted an illegal search of the Petitioner's motel room, the scene of the alleged murder, and evidence seized was erroneously admitted at trial." ECF No. 33-17 at 3. Again, Petitioner was denied relief on these grounds by both the circuit court and Supreme Court of Appeals.

Further, Petitioner has not articulated any grounds that would support relief under the "contrary to" or "unreasonable determination" exceptions found in subparagraphs (1) and (2). Petitioner has not shown any unreasonable application of federal law which occurred in the state proceedings in relation to the search and seizure conducted in the hotel room where the murder occurred. Additionally, Petitioner does not allege that the state court's adjudication resulted in a decision based on an unreasonable determination of the facts.

Thus, under the plain language of § 2254, Petitioner's sixth claim as to the unreasonable search and seizure of Petitioner's hotel room has already been considered in State court and adjudicated on the merits, and does not meet either exception listed in the statute. Accordingly, Petitioner's sixth claim for relief is without merit and should be denied.

**B.     Claims Which Were Procedurally Defaulted**

To the extent that Petitioner raises any issues, which relate to alleged errors in his trial, but which were not raised on direct appeal, or in post-conviction proceedings, he is not entitled to relief on any such claims.

Such a failure to raise those issues on direct appeal precludes relief through habeas proceedings. "Habeas review is an extraordinary remedy and " 'will not be allowed to do service for an appeal.' " Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 1610 (1998) (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S.Ct. 2291, 2300 (1994), and Sunal v. Large, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590-1591 (1947)). Accordingly, Petitioner's claims were either already raised in the state court, or were procedurally defaulted by failure to raise those claims in state court. In either case, this

Court may not grant Petitioner relief.  Failure to exhaust any argument in state court prior to presentment of the same issue in federal court is fatal to a petition for habeas corpus under § 2254.

In Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349 (2004), the Supreme Court held that to, "provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim."  Accordingly, a petition for writ of habeas corpus on behalf of a prisoner in State custody should not be entertained by a federal court unless the petitioner has first exhausted his state remedies.

Regardless of whether Petitioner exhausted his remedies, to the extent that Petitioner asserts any grounds that he did not raise on direct appeal, Petitioner is not entitled to relief because those grounds are now procedurally defaulted for not raising those issues on direct appeal.  Accordingly, for all the above reasons, it is inappropriate for this Court to entertain the Petitioner's federal habeas petition sought under 28 U.S.C. § 2254(d), and the petition should be dismissed with prejudice.

## V.   RECOMMENDATION

For the reasons set forth in this opinion, it is **RECOMMENDED** that the amended petition [ECF No. 24] for habeas corpus, filed pursuant to 28 U.S.C. § 2254, be **DENIED AND DISMISSED WITH PREJUDICE**.

It is further **RECOMMENDED** that the Respondent's motion to dismiss or for summary judgment [ECF No. 33] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which**

**objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:         November 23, 2022

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE